Thank you, Your Honor. Lee Rauch, on behalf of the appellants, Edward and Debra Gelin, may it please the Court. This case presents the question of whether the District Court abused its discretion and committed reversible error in granting the motion to dismiss of the Appellees, instead of granting an extension of time, as it initially did. Notably, both plaintiffs' expert in the case, and the expert of the Baltimore County defendants, agreed that the Appellees, who were defendants below, had responsibility to safeguard the mental health and well-being of the decedent while she was incarcerated for 11 days at the Baltimore County Detention Center, and that a failure in those responsibilities contributed to her death. The District Court here should be reversed for either or both of two reasons. First, on the record, the Gelins did show good cause under Rule 4M, and thus, under its expressed language, must have been granted an extension. Second, the District Court erred in holding that it lacked the discretion to grant an extension absent good cause, despite this Court's statements in at least four other cases in which it has said that a District Court does have such discretion. Turning to the first argument, the District Court erred in finding a lack of good cause, both on the original motion to dismiss, and as to the Rule 60B motion for relief from judgment as to Appellee Schumann. Rule 4M, of course, sets the time period for service, and provides two alternatives that are on their face, non-penal in nature, if service is not made within that time period. The Rule says that if service is not made within 90 days, then the Court must either dismiss without prejudice or order that service be made within a specified time. If good cause is shown, however, the Court must extend the time. So, Counsel, can I just jump in and make sure I understand the timeline? Am I correct that the 90-day period under Rule 4M expired February 9, 2017? Yes, Your Honor. Okay. And your request for an extension took place October 6, 2017? Correct, Your Honor. And the circumstances of that, of course, are very important. Notably, the Gellins and their process server believed that they had accomplished service on two of the Appellees, Schumann and St. Floor, in December of 2016, within a month of the filing of the suit. Were they counseled at that time? Well, I don't know that there's anything in the record that shows that one way or the other, but it is important to note that they share counsel with their employer defending No, no, no. Were the Gellins counseled? I don't know if it was you or someone else. I misunderstood. Yes, Your Honor. Okay. All right. They were counseled at that time, promptly on the filing of the suit. Summonses were submitted to the Court. They were issued. A private process server was promptly retained. And the process server went to the Baltimore County Detention Center. And let's not forget, to be honest, even before a suit was filed, the Gellins made a Maryland Public Information Act request to Baltimore County requesting all of the staffing information at the BCDC during the time of her incarceration, and all records related to the psychological services, psychiatric services provided to her, even before filing suit, trying to identify the After the suit was filed, the process server went to the Baltimore County Detention Center no fewer than three times. And on two of those times, on December 4 and December 8 of 2016, the Baltimore County Detention Center administrator took the papers for St. Floor and Schumann. And I do think it's critical to note that that was after an earlier trip on December 1 to serve papers for Appelese, Sevier, Barr, and Titus, where the Baltimore County Detention Center staff specifically said, no, we can't take papers for these three Appelese. They no longer work there. And then they went back. Well, let's, as to those three, let me just kind of break it down for Barr, Sevier, and that you were informed, your clients were informed, the process server was informed in early December that they could not be served through the administrator there at the Detention Center. And I think the allegation is in December, there was an effort to find their address. Is that right? Correct, Your Honor. And there was no belief, am I correct, that there was no allegation that, you know, your clients believe those parties had been served in December? That is correct, Your Honor. And was any, were any steps taken between the address search in December and the request for an extension in October of the following year concerning those defendants? The record reflects as to those three Appelese that, in addition to the Maryland Public Information Act request and the process server going to the Baltimore County Detention Center, when told that they were not employed there, he did inquire for last contact information and was not provided that. It's also shown that he was, that he performed a skip trace at that time and had no other information. I also think it's important to note that... Was that just, sir, was that in December of 2016? Correct, Your Honor. I also think it's important to note that during the seven months in which their employer, Correct Care, was litigating the motion to dismiss, there had been no scheduling order issued yet. And so discovery had not started. And so there was no ability to serve interrogatories on any of the defendants at that time to try to obtain any additional information. But that is the answer with respect to those three defendants. And in fact, as the record reflects, when this was raised after Correct Care's motion to dismiss had been granted ahead of a conference call with the court, it was raised at that time, it was court advised to file a consent motion for extension of time, which was done, that was granted, and service of process was made on two of those appellees within the 30 days. It's also in the record that the Gillens did contend, and this is something that the trial court made an erroneous finding in its opinion. The trial court said that the Gillens never disputed that they hadn't served all the appellees, and they never disputed that service on Schumann and St. Floor had not been properly made. And there was no such concession or admission by the Gillens. In fact, in their motion for extension of time, in their opposition to the motion to dismiss, and on the conference call with the court, it was explained that they did contend that service on Schumann and St. Floor had been properly made. So that was an erroneous fact. Mr. Ross, can I ask you about that? So I get that. I get that point that maybe that was the assertion that was made, but the question is whether or not that's a mistake of fact or a mistake of law. The service rules seem pretty clear that in this context, that service on the administrator was not proper as a matter of law. So how does that amount, and in fact, if that's correct, then how does that make an argument for good cause? You know, Your Honor, I think that really cuts to the heart of this appeal. And I think that the commentary to the rules, I think the rules itself, the commentary to the rules, the advisory committee notes, and the cases lay out that there is a difference in a mistaken belief that there was service when, in fact, there had been no attempts whatsoever. So, for instance, in this court's decision in Hansen, where there had been no good cause found, and there were various explanations given for that, but there were 15 months, there was no service for 15 months after filing, there was no service after seven months after the transfer of the court from one venue to another, and the plaintiff had explained that he hadn't found new counsel and had believed that the defendant had already been served, but in fact, there had not been any attempts at service. There's a difference between that and a mistaken belief that there was service accomplished. If you look at Wright and Miller, for instance, the counsel does, I mean, so assume a process server goes to someone's house and yells from the front yard, hey, hey, hey, Mr. Smith, you're served, and then gets in and leaves. You know, something that's plainly not service. And, you know, then comes in later and says, hey, we thought we served them. I mean, it seems to me, to Judge Diaz's point, you know, when something is not service and it's really not debatable that it's not service, I'm having a hard time determining, even if there was an attempt, that that's good cause. Your Honor, in answer to your hypothetical, which is different facts here, you know, that I think we could, you've come up with a hypothetical where clearly there was no service. Here, I think there is at least a basis for service, or at least, you know, I think it misses the mark to be arguing whether or not the service actually at the end of the day was correct. But the question is, was there some affirmative or diligent act to make service, and was there at least some reasoned belief that that could be accurate? And here, when you have a process server who goes on December 1, and when the Baltimore County Detention Center indicates that for certain of the appellees, they can't accept papers, but then on two subsequent trips, takes the papers, and the process server puts in his affidavit, I believe that service was complete at that time. I think by negative implication, there has been some representation by the BCDC that service on those two key defendants had been proper. And if you look at, you know, the case law, if you look, for instance, at this court's decision in Scruggs, which quotes to TS Rentals, which also cites the Kwan, the court, this court has noted, by citing these cases, that there have been past instances of good cause found, when a plaintiff immediately corrects what was found to be a technically flawed service. Commentator- Mr. Ross, can I, I'm sorry, I didn't mean to interrupt you, but I'm a little, I think I'm more interested in what I hope you're getting to now, and that is whether or not you even needed good cause under these facts, given the Supreme Court's, I don't know if you want to call it, dicta statement, that rule doesn't even contemplate the requirement for good cause in these circumstances. I'd like you to talk about that. Commentator- I agree, Your Honor, and I almost thought about starting that way. So, alternatively, if the court finds that there is not good cause, or that the district court did not abuse discretion in finding no good cause on some or all of the appellees, it should find that the district court's holding that it lacked authority to extend time absent good cause was itself an abuse of discretion. And we cited the court to a Third Circuit decision, Kane v. Abraxas, that says that making such a finding that it lacked the authority is itself an abuse of discretion. I think the conclusion, you know, when I look at this court's decisions, prior decisions on this issue, I can see that there has been an evolution in the court. We start, obviously, with Mendez, which both sides started, and which I think Judge Niemeyer is very after Henderson. It seems to me that if you assume, and that's what I want to ask you about, if you assume the district court thought it had to find good cause and didn't recognize it otherwise had discretion, then it seems to me you don't have much of a problem in persuading the court that the rule and the law probably allows both. In other words, good cause requires dismissal but in the absence of good cause, there still is discretion, it seems to me. That's absolutely correct, your honor. I think that's... So now the question is, did the district court believe it did not have discretion? And explain why you say that. Oh, it's right in its decision, your honor. Well, that's pointed out to me, yeah. Okay. If I can get to the record. Okay. In page around 259. Thank you. My notes are that the same page that it notes a split in authority as to whether rule 4M gives discretion to extend, but it says that the more recent cases of the Fourth Circuit suggest that it does not have such discretion. But let me get to the actual language. I see it here. Yeah. So it's on page 259. Yeah. Courts do not have discretion to extend in the absence of good cause. Correct. And I think it's... So counsel, can I jump in on this issue? Because if you're right, I mean, I think we have a situation where, you know, Henderson speaks, we got Mendez, we got Henderson. You know, there's a question of whether Henderson's dicta is enough to either overrule Mendez or make the logic of a reasoning of Mendez untenable. And let's assume we agree with you that effectively Mendez is no more. Would the result of that be we would send this back for the district court to evaluate in its discretion whether to grant the extension? I think that's likely the result, your honor. I mean, we would first submit that we believe that there is enough on this record that the circuit court could order that on this record and under other cases, including Scruggs, which recognized, you know, where there's been a technically deficient service that's been properly corrected. That does satisfy... We can't substitute our discretion for the district courts. In other words, we could exercise discretion, but that's not our role. Our role is to determine whether the district court abuses discretion. And so it seems to me, we would have to give the district court the opportunity to exercise discretion or not. If the district court said in these circumstances, I choose not to exercise my discretion, then we have the appellate issue would be whether that was an abuse. To ask us to exercise that discretion doesn't seem to be appropriate. And that's why I started with that. I agree that's the most likely result. All right. You have some rebuttal, I believe. Why don't we hear from Ms. Marini. Thank you, your honor. And I'm going to pick up on the issue of Mendez. In this situation, to answer the question posed by the panel, if Mendez was no more, we're in a situation where the district court has looked at this with discretion under a number of standards already. The district court has reviewed the good cause factors at length in a four-page single-faced opinion, has weighed those factors and has determined that good cause doesn't exist. It appears to me that virtually every factor weighs against... The rule would indicate if it's correct in not finding that good cause was not shown, then that eliminates the mandatory aspect of the extension. The rule seems to have the alternative. It says the court may grant an extension. And if there's good cause, must grant. So here, let's take your argument as adequate, that good cause has not been shown. We want to affirm the district court. The district court didn't seem to recognize that it could assess that on its own discretion. With that one statement, it says there was a split. And it says that the recent cases of the fourth circuit and the that courts do not have discretion to extend Rule M deadline, absent good cause. Now, would you agree that's an error of law? Well, at the time this is written and today, Mendez remains the control... I understand. I'm saying, based on a total assessment right now on appeal, as we look at it, with Henderson and all the other circuits and so forth, and looking at the rule itself, you think that's an error of law? I certainly understand the footnote in Henderson and DICTA and that Mendez has been questioned. The situation the district court is in is that it is required to apply the controlling law of the circuit, which currently, until there's a reported decision that overrules Mendez, is a correct application by the district court of the law in the fourth circuit, as it currently stands. In fact, the Scruggs decision that the opponents have been relying on reaffirms that Mendez is the controlling law, despite questions, until there is a reported decision by the fourth circuit. So really, this case comes down to whether Mendez should continue to stand. You may still, if it doesn't stand, in view of changes, if it doesn't stand, then you agree the court would have to be given the opportunity to exercise its discretion, absent the requirement to find a good cause. Well, in this situation, we have a record where the court would need a reasoned basis to exercise that discretion. There's a lot of reasons the court may or may not want to suggest any outcome, but one of the more powerful arguments is we're in a state where the statute of limitations has run, and we want to be pretty sure that the discretion is exercised with some sensitivity to that. And the district court has looked at that particular issue in the context of the Rule 60 motion as well, and has found that the opponents didn't demonstrate either peaceful neglect or extraordinary circumstances, exercising its discretion subsequently under the Rule 60 motion. Ms. Marini, can I follow up on that point? Yes. Isn't the best evidence that the district court might be inclined to exercise its discretion favorably that it did so once already? That it did so once already, yes. And the district court has looked at this on two separate occasions, both in the original- It granted an extension early on, and this was after the time period for completing service had expired. It granted that extension based on a consent motion, and then at some point, I guess, when it was brought to its attention that there was a good cause requirement for the district court to at least open to exercising its discretion in this case, and so why wouldn't we send it back to the court to make that determination? Well, a point of clarity on what was captioned as a consent motion. These attellees were not a party to the proceedings at that point, did not consent to what was captioned as a consent motion. So after they were served, the matter was brought to their attention. We then filed the request that district court revisit that preliminary decision to grant an extension with the full set of facts in front of it, including the timeline of delay that was available in this case, and it's a significant delay. So counsel, I think that's perhaps a reasonable argument. I mean, Judge Diaz suggests the prior extension is evidence that the court's open to it. Your argument would be, well, at the second time, the district court denied there was good cause, and all those issues might play into the discretion. But it seems like if we assume that Mendez is no longer good law, it's a pretty big jump. It looks like the court in Scruggs kind of did that a little bit, but it's a pretty big jump for us to say we know that the district court would not exercise its discretion. And that's what it sounds like if you grant that assumption about Mendez you're asking us to do. You may be right. It may be that the length of the delay here is something that would cause the court not to exercise its discretion. But it seems like you're kind of asking us to get inside its mind, and maybe there's enough there for us to do it, but that seems like a tall order. And I am not suggesting that, Your Honor, get inside the mind of the district court. What I'm asking is that based on the fact that the district court looked at this for the first time with the full facts in front of it on the motion to dismiss, revisited its earlier decision where it granted provincially the extension of time, revisited that, said no, that's not what the court wants to do. No, no, no, Ms. Marini, what it said was there was no good cause. Correct. We're talking about two different standards. It said that there's no good cause, and then in reviewing the Rule 60 motion, so then the subsequent request by appellees, the court looked again under whether there was excusable neglect. That's an even greater burden. That's an even greater burden than good cause. It is, but it does show the consistency in the district court's rulings on the matter when it's looking at the same fact with the full facts in front of it on the issue of whether in its discretion there should be an extension of time. But, you know, you're basically telling us to rule, and I'm now on the assumption that we conclude Mendez doesn't have vitality now. If we conclude that, then it seems to me the rule gives the discretion to the district court, not to the appellate court, and we could only guess what the district court would rely on or what it wouldn't rely on. There's a broad range of factors that a district judge can consider in determining whether to exercise discretion, and it may turn out that in this case, all the matters you pointed out for good cause are mighty powerful evidence to persuade the court to exercise its discretion in your favor. On the other hand, there are other factors too, but the court felt bound by the good cause standard. I think that's pretty clear from its opinion, and so if we say it's not bound by that standard, it could in its own discretion without suggesting how it exercises discretion. We're trying to guess. I don't think we should try to guess. It seems to me we have to give the court the chance in the first instance to follow the law, right? I think that's correct, and I think also that this is a situation similar to Scruggs, where the record doesn't identify any basis for the court to avoid the application of the rule. The rule still, Rule 4M, still needs to have some meaning. The rule is there to be followed. There's a 90-day service deadline, and the rule already takes into account discretion by allowing the court on a case-by-case basis, as set forth under the case law, to determine whether there is good cause that would allow for an extension of time. So the rule itself tempered its applications to allow good cause, to allow a diligent plaintiff to- Yeah, but under our assumption that the rule also grants discretion absent good cause, then the arguments that you would have to make would be focusing just on factors that would influence a court to exercise its discretion, persuade the court why it didn't feel like it was empowered to exercise discretion. It said it could only do so for good cause. Because it couldn't find good cause, it dismissed the case. But it seems to me the whole function is not an appellate function. The function is given to the district court by the rule, and our only thing we can do, since we don't know what the district court would do on its discretion, the only thing we could do is let the court give us the reasons, make its decision under the right standard, and then determine whether it was an abuse. And as you know, that's a different standard than reviewing good cause, I think. Well, and the good cause finding is actually reviewed under discretion. Yes, yes, of course, yes. And here, you know, we have a lengthy, well-reasoned opinion that goes through and identifies every single factor thoroughly, all of which weigh against the appellants. And it may be, I mean, you may be right. I mean, the district court, when, yeah, if we were to say Mendez no longer is good law, you know, and if we were to remand it, and those are us, we're not deciding anything in real time here. But if you're right, the district court will quickly rule in your favor, and we'd then review whether that was an abuse of discretion. Yeah, you think the record's clear enough to tell us what the district court would do? Is that, that's basically what you're saying, right? I think so, because there needs to be a reasoned basis to extend that discretion. Would it be an abuse of discretion for the court to grant an extension under these facts? Well, then you're asking us, number one, to predict what the district court would do. And then number two, if it did the wrong thing to find that prediction to be an abuse of discretion, we would have to perform both functions, right? Well, there's been a finding by the district court of a lack of good cause and a lack of good faith by the plaintiff specific to serving Mr. Shulman. So, Mr. Shulman, who you'll recall is one of the plaintiffs that the appellants claimed that they believed to have been served through papers delivered to the administrator at the Baltimore County Detention Center. So, the court has already found a lack of good faith on that issue. Subsequent to the- Well, you may find on other issues too. You know, there's this big, long delay as to the others. And you say, what was the attorney doing during this period? Why didn't he review the affidavits, the returns of service and all these things? Was there a decent search made to find them? These are all very legitimate matters that I feel we should be able to present. I'm just questioning how we should predict how the court will exercise discretion and then review that prediction. I understand. And the record on those issues is complete, is determined. And so, we know what happened. We know that there were very limited cursory efforts made. There were three questions that the appellants knew they were not served. And despite that, there was no request for an extension. There was no request for alternate service. There was nothing done simply for seven months plus. And as the district court said, there was nothing revealed by the defendant. This was all within the control of the plaintiffs. So, it's an issue where, you know, the... I hope you're making notes of this argument so you know how to do it. You're persuasive. You know, it's my whole suggestion. I don't think the rule gives us that discretion. I understand. I understand your position, Your Honor. And I just do want to be of an abuse of discretion for the lack of good cause finding. The district court did not abuse its discretion. It went through every single element and factors set forth in the Scott decision at length. And the district court simply put... It followed Rule 4M. It followed Rule 4E on service of an individual. And that is not an abuse of discretion. On the Rule 60 motion, the same applies. The district court didn't evaluate the threshold requirement of whether a Rule 60 motion was appropriate at that time because the court found that there was no excusable neglect. There was no extraordinary circumstances. And that encompasses that statute of limitations issue that Your Honor mentioned earlier. Statute of limitations alone and its expiration is insufficient to provide good cause for an extension. Oh, there's no question about it. The statute of limitations gives a party long time advance notice about filing actions. And it's a bright line rule established by legislatures that courts follow. And anyway, we understand that, I think. Okay, thank you. And if the court does not have any further questions, I will yield the remainder of my time. All right. Thank you, Ms. Marini. All right, Mr. Rausch, you have anything further? Just briefly, Your Honor, to address some of the things that came up in the argument. I think this court has recognized that Mendez... That there's been an evolution of the thinking since Mendez. There have been cases that have the reamendment of the rules in 2015 clarifies it even further and may actually have the effect of superseding that by a rule. This court in Collins versus Thornton in 2019 noted that a plaintiff may escape dismissal for failure to timely serve process if she demonstrates good cause for the delay or if the district court exercises its discretion to extend time for service. I do think that the matter should be remanded to the district court to exercise its discretion. There are a number of opinions within district judges of the four circuits stating that the discretion would be that there would have to be some reasoned basis. And clearly, you can see just from the back and forth this morning... My view of this record is that there's a reasoned basis to go either way. Well, there you go. And so that's going to be something for the district judge. But it is noteworthy as the court has already recognized that they are different standards. The district judge specifically said at page 259 of the record that he felt constrained to find only good cause. And I think it is telling that the district judge did not say at that time that I find it doesn't make any difference that under any standard, I wouldn't have granted an extension. Didn't say that. And so the implication is that they may have thought differently. I think that is buttressed by the fact that when this first came up, they initially granted service. When you look at the cases on good cause and extending time in this circuit, and you look at other cases on motions to dismiss for insufficiency of service, you typically see a preference to have things decided on the merits. You typically see some second chance. But, you know, I don't think you can get a lot of comfort from all of those things since whether you or your colleague or your predecessor, whoever, somebody has to attend getting the case started. And that means either when I practice as a lawyer, I did service many times by myself rather than hire service processes. I remember doing it on times where I knew it was going to be difficult and time was of the essence. But you at least, when you have a process server, you review the affidavits and you file them and you satisfy yourself, you've got them served. Nothing in this case indicates that kind of care that was needed at that point in time. So that cuts a lot against those notions that sure, we wanted to decide the merits. I think that's the whole process system is about. But we also have to have a process. And if we constantly tear down the process, then it's gone. And so, these are things that I think you should argue before the district judge. And you heard some of the arguments already being made by Mrs. Marini. So, anything else? No, your honor, I will. I want to thank you both. This is an interesting argument and raises interesting problems. And at this point, we would come down and shake your hands. And we miss that terribly. We'll resume that again as one of our iconic practices once we get over this COVID business. But in the meantime, thank you for your arguments. And this little speech to you has to serve as our greetings. Thank you. Understood, your honor. Thank you to all of you.
judges: Paul V. Niemeyer, Albert Diaz, A. Marvin Quattlebaum Jr.